NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>**$3,415,000.00 IN UNITED STATES CURRENCY,**<br><br>*Defendant in Rem.* | Civil Action No. 17-4429<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

This matter comes before the Court on Plaintiff United States of America's ("Plaintiff" or "the Government") motion for the entry of default judgment and final order of forfeiture of a total of $3,415,000.00 in U.S. currency ("Defendant Property") pursuant to Federal Rule of Civil Procedure 55(b). ECF No. 6. For the reasons set forth herein, the motion is **GRANTED**.

**I.   BACKGROUND**

This action stems from corrupt payments made from November 2006 to December 2009 by Linde Gas North America LLC ("Linde"), through its subsidiary Spectra Gases, Inc. ("Spectra Gases"). Compl. ¶¶ 5-6, 12. These payments were issued to high-level employees of the National High Technology Center ("NHTC"), which specialized in the production of rare and specialty gases and was 100% owned and controlled by the Republic of Georgia ("Georgia"). Id. ¶¶ 7-8, 12. In turn, these employees of NHTC, which were "foreign officials" within the meaning of the Foreign Corrupt Practices Act, 15. U.S.C. § 78dd-1, et seq. ("FCPA"), agreed to use their official

1

positions to assist Spectra Gases in being selected as the purchaser of a column used for the production of highly purified boron gas. Id. ¶ 13.

Three principal shareholders and managers of Spectra Gases (the "Spectra Executives") agreed to share the revenues earned as a result of this arrangement with the two NHTC officials and a third-party intermediary with close ties to those officials (collectively, the "NHTC Officials"). Id. ¶ 14. The Spectra Executives made this arrangement prior to Linde's acquisition of Spectra Gases, but they continued to manage Spectra Gases for three years following the acquisition pursuant to a so-called "Earn Out" arrangement. Id. In order to effect this corrupt agreement, the Spectra Executives and the NHTC agreed to form two new companies, Spectra Investors, LLC ("Spectra Investors") and Spectra Gases Georgia. Id. ¶¶ 10-11, 15. The NHTC Officials also owned and controlled two additional shell companies to aid in the corrupt scheme, Far Point Ventures, Inc. ("Far Point") and Transcontinental, Ltd. ("Transcontinental"). Id. ¶¶ 8-9, 17-18.

The Defendant Property were funds on deposit in the Spectra Investors bank account, held at Commerce Bank in Branchburg, New Jersey (the "Spectra Investors Account"), and were all proceeds received as a result of the scheme to violate the FCPA. Id. ¶ 19. The corrupt agreements between the Spectra Executives and NHTC Officials provided for these funds to be distributed to the entities they owned and controlled, including $1,492,000 to Transcontinental, $1,160,000 to Far Point, and $762,526.82 to Spectra Gases Georgia. Id. Upon discovering this scheme, Linde, which at the time controlled the Spectra Investors Account, did not make the upcoming distributions and instead withheld the monies on the basis that they were likely the proceeds of crime or were to be transferred in order to promote and further a corrupt scheme. Id.

On June 16, 2017, the Government commenced a civil judicial action for the forfeiture of the Defendant Property by filing a Verified Complaint for Forfeiture in Rem (the "Verified Complaint"). ECF No. 1. On February 9, 2018, a Warrant for Arrest in Rem was issued for the Defendant Property. ECF No. 5. On November 30, 2016, the Government filed with this Court a Declaration of Publication with a copy of the Notice of Forfeiture Action against the Defendant Property in Rem (the "Notice of Complaint"). ECF No. 4. The Notice of Complaint stated that any person who wished to assert an interest in and avoid forfeiture of the Defendant Property must file a conforming claim with the Clerk of the Court within the time allotted. Id. The Government also posted notice of the instant forfeiture action on its official forfeiture website, www.forfeiture.gov, for thirty consecutive days from July 1, 2017 through July 30, 2017. Id. No claims or answers were filed in this action.

## I. STANDARD OF REVIEW

"The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred." Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008) (quotation omitted). When evaluating a motion for default judgment, courts consider (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000). Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

## II. ANALYSIS

### A. Procedural Requirements for Civil Asset Forfeiture

Civil asset forfeiture actions in rem are governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") and 18 U.S.C. § 983. Under Rule G, the government must file a verified complaint that states the grounds for subject-matter jurisdiction, in rem jurisdiction over the property, and venue; describes the property with reasonable particularity; states the property's location when any seizure occurred and its location when the action is filed; identifies the statute under which the forfeiture action is brought; and provides sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. See Supp. R. Certain Adm. & Mar. Cl. G(2).

If the property is not real property and is already in the government's possession, custody, or control, the Clerk must issue a warrant to arrest the property before it can be seized. Id. at § 3(b). Once the arrest warrant is issued, the government may arrest the property pursuant to the warrant. Id. at § 3(c). And finally, the government must publish notice of the forfeiture action for any potential claimants that it is not aware of, and must give direct notice to any potential claimants that it is aware of. Id. at § 4. For potential claimants that the government does not know, the government must publish notice within a reasonable time after the Verified Complaint is filed, which may be satisfied by posting a notice on an official internet government forfeiture site for at least thirty consecutive days. Id. at § 4(a)(iv)(C). For potential claimants known to the government, the government must send notice of the action and a copy of the Verified Complaint "by means reasonably calculated to reach the potential claimant," including to the potential claimant directly or to his attorney. Id. at § 4(b)(iii).

To make a claim for the property and avoid potential forfeiture, a potential claimant must file a claim that conforms to Rule G(5)(a) of the Supplemental Rules and 18 U.S.C. § 983(a)(4)(A). Rule G(5)(a) provides that the potential claimant must file a claim in the court where the action is

pending that identifies the specific property claimed, identifies the claimant and the claimant's interest in the property, is signed by the claimant under penalty of perjury, and is served on the government's attorney. Under 18 U.S.C. § 983(a)(4)(A), the claim must be filed no later than thirty days after the date of service of the government's Verified Complaint or no later than thirty days after the date of final publication of notice of the filing of the Verified Complaint.

### B. The Government Has Satisfied the Procedural Requirements

The Government has met the requirements of Rule G and 18 U.S.C. § 983. On June 16, 2017, the Government filed a Verified Complaint seeking the forfeiture of $3,415,000.00 in U.S. currency. The Verified Complaint asserts that this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355(a), and in rem jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b)(1). Compl. ¶¶ 2-3. It also describes the Defendant Property with reasonable particularity, in that it describes the amounts and form in which the money was received, as well as the location and circumstances of its seizure. Id. ¶¶ 4-22.

The Government also adequately identifies the statutory basis for this action. See Compl. ¶¶ 24-25, 33-37. Specifically, pursuant to 18 U.S.C. § 981(a)(1)(A), the Defendant Property is subject to seizure and forfeiture as property involved in money laundering transactions and attempted money laundering transactions, and as property traceable to such property. Id. ¶ 24. The Defendant Property is further subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds traceable to a felony violation of the FCPA. Id. ¶ 33.

The Verified Complaint provides sufficient facts to support a reasonable belief that the Government will be able to meet its burden at trial. It details the corrupt scheme to violate the FCPA between the Spectra Executives and the NHTC Officials, as well as the mechanisms by

which they laundered the proceeds of that scheme, including the Defendant Property, and funneled it through their various shell companies. Compl. ¶¶ 12-22. Accepted as true for the purposes of this motion, see Comdyne, 908 F.2d at 1149, these facts are sufficient to establish a reasonable belief that the Government would be able to prove at trial that the Defendant Property constitutes proceeds involved in or traceable to money laundering transactions, as well as property constituting or derived from proceeds traceable to a felony violation of the FCPA.

Finally, the Government followed the proper procedures after filing the Verified Complaint. On February 9, 2018, the Government requested and received a warrant to arrest the Defendant Property. On February 8, 2018, the Government posted a Declaration of Publication containing a Notice of Complaint for Forfeiture in Rem on the docket. The Notice stated that any person who wished to assert an interest in the Defendant Property must file a verified claim within 60 days after first publication of the Notice of Complaint. Finally, the Government published the Notice on its official forfeiture website, www.forfeiture.gov, for thirty consecutive days.

### C. No Potential Claimant Has Filed a Claim

The requirement that a potential claimant file a verified claim "'is no mere procedural technicality.'" United States v. $487,825.000 in U.S. Currency, 484 F.3d 662, 665 (3d Cir. 2007), as amended (May 14, 2007) (quoting United States v. $23,000 in U.S. Currency, 356 F.3d 157, 163 (1st Cir. 2004)). "Because of the important interests served by requiring a verified statement, district courts are entitled to insist upon procedural regularity." Id. There have been no claims filed for the Defendant Property in this matter. As a claim must be filed no later than thirty days after the date of service of the government's Verified Complaint or no later than thirty days after the date of final publication of notice of the filing of the Verified Complaint, the time period to file a claim has expired. See 18 U.S.C. § 983(a)(4)(A).

### D. Default Judgment is Appropriate

Default judgment is appropriate under the circumstances. As an initial matter, the Government is entitled to default judgment because no potential claimants have filed a verified claim or valid answer to the Verified Complaint. $487,825.000, 484 F.3d at 664; United States v. Assorted Jewelry Valued at $13,430.00, No. 11-0777, 2013 WL 775542, at *2 (D.N.J. Feb. 28, 2013). As the Government posted the forfeiture notice on its website and made reasonable efforts to directly notify any known potential claimants, any potential claimants bear the responsibility for their failure to file a verified claim. United States v. $75,000 in U.S. Currency, No. 14-7633, 2015 WL 3409468, at *4 (D.N.J. May 27, 2015). Moreover, the Government would suffer prejudice if default judgment and final order of forfeiture were denied, because it does not have any alternate remedy against the Defendant Property. United States v. $16,010.00 in U.S. Currency, No. 11-945, 2011 WL 2746338, at *6 (D.N.J. July 13, 2011). Thus, the Court will enter default judgment in favor of the Government and will order forfeiture of the Defendant Property.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's motion for final judgment by default against Defendant and for a final order of forfeiture is **GRANTED**. No right, title, or interest in the Defendant Property shall exist in any other party. An appropriate Order accompanies this Opinion.

**Dated: September 14, 2018**

>*/s Madeline Cox Arleo*
>**MADELINE COX ARLEO**
>**United States District Judge**